UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAUREN IBBOTSON ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| VS ) | C.A. No: 04CV12371MLW |
| ) | |
| CINDY J. HUSTEAD FELDMAN, ) | |
| PETER FESCOE, AND ) | |
| ARBELLA MUTUAL INSURANCE ) | |
| Defendants ) | |
| ) | |

# JOINT STATUS CONFERENCE MEMORANDUM

### GENERAL STATUS OF CASE:

Plaintiff's Complaint was originally filed on November 9, 2004. The Complaint has most recently been amended on or about June 30, 2005, adding defendant, Arbella Mutual Insurance Company to add a claim for M.G.L.A. Chapter 93A and Chapter 176 D claiming unfair business practices on the part of Arbella for refusing to timely enter into settlement discussions when liability and damages were clear.

I.  DISCOVERY:

   a. Plaintiff and Defendants, Fescoe and Hustead Feldman, have provided Rule 26 Disclosures including full medical bills and records.

   b. The deposition of defendant, Peter Fescoe and Plaintiff Lauren Ibbotson were taken on July 13, 2005. The Parties are considering whether any further discovery will be required.

II  PLAINTIFF'S POSITION:

   A.  LIABILITY:

On Friday, May 28, 2004, the date of the accident, the Plaintiff, Lauren Ibbotson, age 18, a senior in high school, was a passenger in a vehicle owned by Cindy Feldman, and driven by Defendant Peter Fescoe, age 19, the boyfriend of the Plaintiff. Cindy Feldman is the mother of Rebecca Feldman, who was the Plaintiff's roommate at the time. Peter Fescoe had permission to drive the Feldman vehicle.

On the date of the accident, the Plaintiff and Defendant were traveling from Newport, Rhode Island, where they shared an apartment, to the Defendant's parents home in Scituate, Massachusetts. They left Newport between 4:00 p.m. and 5:00 p.m.. Their route took them from Route 114 to Route 24 North. After entering Route 24 the vehicle was at all times in the high speed lane. In the vicinity of the Raynham-Taunton line, the Defendant lost control of the vehicle resulting in a severe accident.

The Plaintiff and Defendant had been arguing as they traveled from Newport to where the accident occurred and the Defendant admits that he was angry as they were driving. The Defendant had a cell phone with him and had been using his cell phone on and off throughout the ride and had engaged in 5 or 6 conversations as they traveled. The Plaintiff claims that the Defendant was exceeding the speed limit and traveling at approximately 70 to 75 miles per hour just before the accident. The Defendant claims that he was traveling 65 miles per hour.

Both parties generally agree that moments before the accident the Defendant's cell phone rang and the Defendant picked up the cell phone, looked at it to see who was calling and then shut the cell phone off. At approximately the same time as the Defendant's attention was focused on the cell phone, a vehicle from the right had merged in front of their vehicle.

However, the two stories vary with regard to the details of what occurred and when.

The Plaintiff claims that the Defendant was distracted by the cell phone call and not paying attention to the road or to the vehicle that had just merged in front of them. The Plaintiff further claims that after answering his cell phone, the Defendant looked up and it was clear to that their vehicle was rapidly closing on the vehicle that had merged in front of them and in an attempt to avoid a collision, the Defendant swerved the vehicle to the right, causing the vehicle to travel across the highway and strike the guard rail, resulting in severe injuries to the Plaintiff.

The Defendant claims that when his cell phone rang that he picked it up and looked at who was calling and turned the ringer off. He further claims that he had put the phone down and it was at this point that the vehicle from the right merged in front of his vehicle. He claims that he was cut off. The Defendant further testified that between 10 and 15 seconds later he observed the brake lights of the vehicle in front of him go on and when he realized that he would be unable to avoid the car in front of him swerved to the right to avoid a collision, causing his car to travel across the highway striking the guard rail.

The Defendant's version lacks credibility in that subsequent to the accident he failed to advise his own insurance company of the involvement of his cell phone use during the accident. Moreover, he specifically asked the Plaintiff not to mention the cell phone or its use to her attorney. When questioned why he did not mention the cell

phone use to his own insurance company and why he asked the Plaintiff not to mention the cell phone use, he testified that he thought he would get in further trouble with his parents. When questioned during his deposition why he would seek to hide the use of the cell phone, when, according to his testimony, it played no role in the accident, he could not provide an explanation. Finally, the Defendant, although he has been in other accidents, falsely reported to his insurance company that he had never been in a prior accident.

Even if the Defendants version is to be believed, the Defendant nevertheless admits that from the time the other car merged into his lane, he had at least 10 to 15 seconds prior to the other vehicle allegedly applying its brakes, to slow his vehicle to safely extend the distance between the two vehicles .

The Defendant further admits that he was traveling too close to the other vehicle to avoid a collision and, when questioned, admits that he does not know the safe distance he is supposed to maintain between vehicles, to avoid a collision if the vehicle in front slows.

In light of the above the Defendants liability is clear.

B. DAMAGES:

The Plaintiff sustained a fractured back at T-4 and T-6-7 resulting in back surgery and the permanent installation of rod and screws in her back. She was initially hospitalized for a week and a half. She then returned home and returned to the hospital four (4) days later for a second surgery and was hospitalized for an additional week. The Plaintiff was subsequently released to a nursing home for four (4) days where she had an IV installed for an infection that had developed in her back. She was on the IV for approximately six (6) weeks. The Plaintiff has undergone two three months rehabilitation. The Plaintiff has permanent disability leaving her unable to perform all of her former activities including running. She was a star cross country runner while in high school. (See Attached Medical Report)

The Plaintiff's medical bills are approximately $152,000.00.

C. SETTLEMENT DISCUSSIONS:

The Feldman vehicle is insured in the amount of $20,000.00 by Geico Insurance Company who have previously offered their policy.

The Defendant Fescoe is insured under his father's automobile insurance policy with Arbella Mutual Insurance Company in the amount of $500,000.00, which the Plaintiff has demanded.

      The Plaintiff recently filed a 93A demand against Arbella Insurance Company for their failure to engage in any settlement discussions. The Defendant in response has recently offered $275,000.00.

### III.    DEFENDANT CINDY J. HUSTEAD FELDMAN AND PETER FESCOE'S POSITION

#### A.    LIABILITY:

      The Defendants Cindy J. Hustead Feldman and Peter Fescoe deny that they were negligent. They expect the evidence to show that on May 28, 2004 Peter Fescoe was operating Cindy J. Hustead Feldman's vehicle with the Plaintiff as his passenger on Route 24 North. Defendant Fescoe will testify that he was traveling in the left hand lane at a reasonable rate of speed when an unidentified vehicle entered Rt. 24 North from an onramp to his right. He will testify that the unidentified vehicle then cut him off in the left lane and suddenly pressed on its brakes. Defendant Fescoe will testify that in an effort to avoid a collision with that vehicle, he swerved to the right and that there was nothing he could have done differently to avoid an accident.

#### B.    DAMAGES:

      Defendant Hustead Feldman and Fescoe dispute the nature and extent of the Plaintiff's alleged injuries and the reasonable necessity and relatedness of her medical expenses.

#### C.    SETTLEMENT DISCUSSIONS:

      The Feldman vehicle is insured in the amount of $20,000.00 by Geico Insurance Company who have previously offered their policy.

      The Defendant Fescoe is insured under his father's automobile insurance policy with Arbella Mutual Insurance Company in the amount of $500,000.00, which the Plaintiff has demanded.

      The Plaintiff recently filed a 93A demand against Arbella Insurance Company for their failure to engage in any settlement discussions. The Defendant in response has recently offered $275,000.00.

IV    **DEFENDANT ARBELLA MUTUAL INSURANCE COMPANY'S POSITION:**

A.    **LIABILITY:**

It is the position of Defendant, Arbella Mutual Insurance Company, that the liability of it's insured is not reasonably clear as the plaintiff alleges in her Chapter 93A claim. To the contrary, Arbella expects the evidence to show the following: that on May 28, 2004, it's insured, Peter Fescoe, operated the vehicle in which the plaintiff, Lauren Ibbotson, was a passenger at a reasonable rate of speed; that it was the negligence of an unidentified third party, operating a vehicle at the same time and place, that caused the accident; and that there was nothing Defendant Fescoe could have done differently to avoid the accident. Defendant Arbella posits that Defendant Fescoe was not negligent.

Furthermore, Arbella states that it is not liable to the plaintiff under M.G.L. Chapter 93A, nor has its conduct violated M.G.L. Chapter 176D. Arbella has conducted and continues to conduct a good faith investigation of this claim, and has made a reasonable settlement offer to the plaintiff. Arbella expects the evidence will show that on August 30, 2004, Arbella received the plaintiff's demand for the policy limit of $500,000.00; however, at that time Arbella was not in possession of any medical records to support said demand. Hence, there the plaintiff was not in compliance with the procedural requirements of Chapter 93A, Section 9. In September, Arbella received some but not all of the plaintiff's medical records in response to their request seeking materials to support the plaintiff's contentions.

Once equipped with medical records, Arbella began a review of the documents for the purpose of evaluating the claim. Within the last several months, Arbella has continued to receive additional medical records, including a report from orthopedic surgeon Barry S. Sapeira, M.D. who, at plaintiff counsel's request, evaluated the plaintiff's injuries. To date, Arbella has not received a narrative report from the plaintiff's neurosurgeon, J. Frederick Harrington, M.D., and is in receipt of only his surgical notes. On June 30, 2005, Arbella made a good faith offer of $275,000.00 to the plaintiff. For these reasons, Defendant Arbella states that it is not liable to the plaintiff under M.G.L.A. Chapter 93A.

B.    **DAMAGES:**

Defendant Arbella Mutual Insurance Company disputes the nature and extent of the Plaintiff's alleged injuries and the reasonable necessity and relatedness of her medical expenses.

C.  **SETTLEMENT DISCUSSIONS:**

Defendant Arbella has extended a settlement offer to the plaintiff in the amount of $275,000.00. Arbella does not admit liability, but is willing to negotiate towards a settlement.

The plaintiff, Lauren Ibbotson
By her Attorneys,
BRIAN CUNHA & ASSOCIATES

_____
Brian R. Cunha, Esquire (BBO:108560)
311 Pine Street
Fall River, MA 02720
(508) 675-9500

The defendants, Cindy Hustead Feldman, and Peter Fescoe
By their Attorneys,
WESTON, PATRICK, WILLARD & REDDING

_____
Elizabeth A. Shaw, Esquire (BBO: 655183)
84 State Street
Boston, MA 02109-2299
(617) 742-9310

The defendant Arbella Mutual Ins. Co.
By their Attorneys,
COSGROVE, EISENBERG & KILEY, P.C.

_____
Martin S. Cosgrove, Esquire (BBO# 100920 )
803 Hancock Street
Quincy, MA 02170
(617) 479-7770

## CERTIFICATION

I, Brian R. Cunha, Esquire, hereby certify that I have served a copy of the foregoing, Joint Status Conference Memorandum upon the following;

VIA FACSIMILE: (617) 742-5734
Elizabeth A. Shaw, Esquire
**WESTON, PATRICK, WILLARD & REDDING**
84 State Street
Boston, MA 02109-2299

VIA FACSIMILE: (617) 773-6901
Martin S. Cosgrove, Esquire
Elizabeth A. Canty, Esquire
**COSGROVE, EISENBERG & KILEY, P.C.**
803 Hancock Street
Quincy, MA 02170

and by mailing same, first class mail, postage prepaid, this 26th day of July, 2005.

Brian R. Cunha, Esquire