UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAUREN IBBOTSON           Plaintiffs <br><br> VS <br><br> CINDY J. HUSTEAD FELDMAN, <br> PETER FESCOE, AND <br> ARBELLA MUTUAL INSURANCE           Defendants | ) <br> ) <br> ) <br> ) <br> ) C.A. No: 04CV12371MLW <br> ) <br> ) <br> ) <br> ) <br> ) |

# JOINT FINAL PRETRIAL MEMORANDUM

1.  **SUMMARY OF EVIDENCE:**

    (a) <u>FOR THE PLAINTIFF - LIABILITY OF THE DEFENDANT PETER FESCOE</u>

    On Friday, May 28, 2004, the date of the accident, the Plaintiff, Lauren Ibbotson, age 18, a senior in high school, was a passenger in a vehicle owned by Cindy Feldman, and driven by Defendant Peter Fescoe, age 19, the boyfriend of the Plaintiff. Cindy Feldman is the mother of Rebecca Feldman, who was the Plaintiff's roommate at the time. Peter Fescoe had permission to drive the Feldman vehicle.

    On the date of the accident, the Plaintiff and Defendant were traveling from Newport, Rhode Island, where they shared an apartment, to the Defendant's parents' home in Scituate, Massachusetts. They left Newport between 4:00 p.m. and 5:00 p.m.. Their route took them from Route 114 to Route 24 North. After entering Route 24 the vehicle was at all times in the high speed lane. In the vicinity of the Raynham-Taunton line, the Defendant lost control of the vehicle resulting in a severe accident.

    The Plaintiff and Defendant had been arguing as they traveled from Newport to where the accident occurred and the Defendant admits that he was angry as they were driving. The Defendant had a cell phone with him and had been using his cell phone on and off throughout the ride and had engaged in 5 or 6 conversations as they traveled. The Plaintiff claims that the Defendant was exceeding the speed limit and traveling at approximately 70 to 75 miles per hour just before the accident. The Defendant claims that he was traveling 65 miles per hour.

    Both parties generally agree that moments before the accident the Defendant's cell phone rang and the Defendant picked up the cell phone, looked at it to see who was calling and then shut the cell phone off. At approximately the same time as the Defendant's attention was focused on the cell phone, a vehicle from the right had merged in front of their vehicle.

However, the two stories vary with regard to the details of what occurred and when.

The Plaintiff claims that the Defendant was distracted by the cell phone call and not paying attention to the road or to the vehicle that had just merged in front of them. The Plaintiff further claims that after answering his cell phone, the Defendant looked up and it was clear to that their vehicle was rapidly closing on the vehicle that had merged in front of them and in an attempt to avoid a collision, the Defendant swerved the vehicle to the right, causing the vehicle to travel across the highway and strike the guard rail, resulting in severe injuries to the Plaintiff.

The Defendant claims that when his cell phone rang that he picked it up and looked at who was calling and turned the ringer off. He further claims that he had put the phone down and it was at this point that the vehicle from the right merged in front of his vehicle. He claims that he was cut off. The Defendant further testified that between 10 and 15 seconds later he observed the brake lights of the vehicle in front of him go on and when he realized that he would be unable to avoid the car in front of him swerved to the right to avoid a collision, causing his car to travel across the highway striking the guard rail.

The Defendant's version lacks credibility in that subsequent to the accident he failed to advise his own insurance company of the involvement of his cell phone use during the accident. Moreover, he specifically asked the Plaintiff not to mention the cell phone or its use to her attorney. When questioned why he did not mention the cell phone use to his own insurance company and why he asked the Plaintiff not to mention the cell phone use, he testified that he thought he would get in further trouble with his parents. When questioned during his deposition why he would seek to hide the use of the cell phone, when, according to his testimony, it played no role in the accident, he could not provide an explanation. Finally, the Defendant, although he has been in other accidents, falsely reported to his insurance company that he had never been in a prior accident.

Even if the Defendants version is to be believed, the Defendant nevertheless admits that from the time the other car merged into his lane, he had at least 10 to 15 seconds prior to the other vehicle allegedly applying its brakes, to slow his vehicle to safely extend the distance between the two vehicles.

The Defendant further admits that he was traveling too close to the other vehicle to avoid a collision and, when questioned, admits that he does not know the safe distance he is supposed to maintain between vehicles, to avoid a collision if the vehicle in front slows.

In light of the above the Defendants liability is clear.

Plaintiff 's damages consisted of a T-6 burst fracture T-4 to T-7 compression fractures in her back which required a T-3 through T-8 thoracic fusion with segmental spinal instrumentation which was performed by Dr. Harrington on June 2, 2004. The Plaintiff was discharged on June 8, 2004 and re-admitted on June 13, 2004, and was operated on a second time. On June 21, 2004 the Plaintiff was transferred to Heatherwood Nursing Home in Newport Rhode Island for rehabilitation and was discharged on June 24, 2004. After her discharge she continued with outpatient rehabilitation which has continued to this date. At the time of the accident the

Plaintiff was a senior in high school in Newport Rhode Island and is currently attending college in Charlotte South Carolina. She was seen two weeks ago in the emergency room for continued pain, spasms and discomfort in her back.

The Plaintiff was evaluated by Dr. Barry Saperia on April 7, 2005 and given a 17% permanent loss of function as the result of this accident. Plaintiff has in excess of $152,225.91 in medical expenses not including the expenses from Vanderbuilt Rehab and the emergency room in South Carolina.

Based on representations made by the Defendant that the policy limits were $500,000.00, the Plaintiff demanded the policy limits of $500,000.00 to settle the claim.

### 93A CLAIM AGAINST ARBELLA MUTUAL INSURANCE COMPANY

The Plaintiff made demand on the Defendant to resolve this claim for their policy limits in December 2004. As early as September 20, 2004, the Defendants had been provided medicals records and bills indicating the nature of her injuries and the fact that the medical bills had exceeded $150,000.00. At that time the Defendant increased their reserves to $280,000.00. From December 2004, through June 2005 numerous requests were made to attempt to resolve the case, including multiple requests for mediation, which the Defendant rejected and refused to engage in settlement discussions despite the fact that liability and damages were clear. Moreover, despite numerous calls to the Defendant with regard to the Plaintiff's claim, the Defendant failed to make any offer of settlement. During that time the Defendant's Adjuster and Supervisors acknowledged in internal memorandum that liability was clear and the case was likely worth the $500,000.00 under Mr. Fescoe's policy, yet failed to offer anything to Plaintiff in settlement of the claim.

Specifically, on June 25, 2004, Julie Mumblo, an adjuster for Arbella acknowledged that there was "lots of exposure".

On October 1, 2004, Lisa Palma acknowledged that she " truly believed that they were in this for 1% and 1% will not be hard for Cunha to prove".

On November 1, 2004, Dan Birchell, Lisa Palma's Supervisor acknowledged to Lisa Palma that "our exposure to this claim is very large" and encouraged her to look into any way that they could avoid payment on the policy through some potential exclusion.

On December 7, 2004, Attorney Kathy Brink was retained by Arbella Insurance Company to represent their interest in this case. In a memorandum of this date Lisa Palma acknowledged as follows; "discussed this case with Kathy. We both feel at some point this policy will be gone".

On June 30, 2005, despite the Defendant Arbella's acknowledgment of liability and damages Lisa Palma notes "we will not admit liability, but will negotiate".

3

On July 14, 2005, in a letter written by Arbella's counsel, Elizabeth Canty to Lisa Palma, Canty opines as a result of Mr. Fescoe's deposition, that "Mr. Fescoe, (the Defendant) presented as somewhat of a troubled young man whose credibility is highly questionable".

The above sequence of actions by Arbella Insurance Company represents a clear violation of M.G.L.A. c. 176 D and M.G.L. c. 93 A, which defines as unfair or deceptive acts in the business of insurance: "(d) refusing to pay claims without conducting a reasonable investigation based upon all available information"; or "(f) failing to effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear".

In this case, for over a year, the Defendants in their own internal memo have acknowledged liability and damages and nevertheless, have continued to fail to resolve this matter in a prompt and fair manner.

In December 2004, the Defendant Arbella learned from Fescoe that he had a $1,000,000.00 umbrella policy over and above the $500,000.00 available under Mr. Fescoe's automobile insurance policy. Despite this knowledge, internal documents reveal that Arbella Insurance Company for almost one year, deliberately chose not to disclose to the Plaintiff the availability of additional coverage, which was requested in June 2004. The Plaintiff first received notice of this coverage from Arbella's defense counsel in October 2005, approximately ten (10) months after Arbella was aware of the umbrella policy.

Furthermore, as early as September 20, 2004, the Defendant put a reserve on this case in the amount of $280,000.00 which was increased to $350,000.00 on October 5, 2004. In a memorandum dated January 25, 2005, to Lisa Palma at Arbella, Phil Messina from the Home office acknowledged that the value of this claim may very well be worth $500,000.00. Despite this memo the Defendant failed to offer anything to resolve this case.

On or about November 30, 2004 as the result of the Defendant's failure to offer any payment of settlement of this claim the Plaintiff was forced to file suit. Discovery was commenced. As of June 7, 2004, the Defendant continued to fail to offer any settlement on this claim and a 93A letter was forwarded to the Defendant. On June 30, 2005, the Defendant, in response to the 93A letter offered $275,000.00 to settle this claim. As of this date the offer remains the same.

It is Plaintiff contention that the Defendant, despite it recognition of liability and the fact that they would likely be responsible to pay at least $500,000.00 to settle this claim engaged in unfair settlement practices and intentionally withheld information from the Plaintiff in violation of M.G.L.A. c. 93A, requiring the Plaintiff to file suite and engaged in lengthy and unnecessary discovery and litigation.

      (b)      FOR THE DEFENDANT CINDY J. HUSTEAD-FELDMAN AND PETER FESCOE:

Defendant expect the evidence will show that at the time of the accident the Plaintiff was a passenger in a motor vehicle owned by Cindy Hustead-Feldman and operated by Peter Fescoe. Peter Fescoe is expected to testify that he was traveling on Route 24 North on the left hand lane at approximately 65 MPH. The Plaintiff was in the front passenger seat.

4

As Fescoe traveled northbound, a vehicle merged onto Route 24 from an on-ramp to his right and the vehicle then merged directly into the left lane in front of him, then that vehicle suddenly braked in front of him.  Upon seeing the brake lights, Fescoe immediately stepped on his brakes, and in reaction to this sudden emergency, he turned the steering wheel of his vehicle to the right.  Unfortunately, that caused his vehicle to travel across the right lane and strike the guardrail.

It is also expected that Fescoe will testify that at about the time the other vehicle was merging into traffic, he received a call on his cell phone.  However, in response to the ring of his cell phone, he turned the cell phone off, and that occurred before the other vehicle had merged in front of him.

The Defendant's scheduled a medical examination of the Plaintiff by agreement of counsel for October 10, 2005 with Edward Tarlov, M.D.  Unfortunately, the Plaintiff had to cancel the appointment at the last moment and the examination will now take place on October 31, 2005.  The Defendant will Supplement this Pretrial Memorandum with Dr. Tarlov's expected testimony after the examination.

_____(c)    FOR THE DEFENDANT ARBELLA MUTUAL INSURANCE:

In this case the Plaintiff was a right front seat passenger in a vehicle operated by Peter Fescoe and owned by the Defendant, Cindy J. Hustead Feldman.  The Fescoe car was involved in an accident on Route 24 in Taunton on May 28, 2004.  In a recorded statement, and again at his deposition, Mr. Fescoe stated that he was not at fault because he was operating at the speed limit when he was cut off by an unknown vehicle.  Mr. Fescoe's statement about being cut off by an unknown driver which entered his lane of travel was confirmed by the Plaintiff in her deposition taken on July 13, 2005.  She stated the car was in front of them for just seconds before Peter Fescoe swerved to avoid it.  Even though from the outset of this case Mr. Fescoe has denied responsibility and even though from the outset liability has been disputed, Arbella recognized that since the Plaintiff was a passenger in a vehicle that was caused to go out of control that it was probably going to be a liability case.  Liability has always been an issue in the case and the fact that liability was contested was always anticipated to be considered in negotiations.

The Fescoe vehicle involved in the accident was insured by Geico Insurance Company.  Arbella had an auto policy insuring Peter Fescoe's father, and because Peter was a household member that policy afforded an additional $500,000 coverage.  The father also had an umbrella policy of One Million Dollars which also affords coverage in the case.

In August of 2004 Geico offered their $20,000 coverage to the Plaintiff.   Attorney Cunha, on August 26, 2004, wrote a letter to Arbella demanding the $500,000.00 coverage.  Arbella responded that they had received no medicals from him and nothing to substantiate the extent of the damages.

The Plaintiff commenced suit in November 2004 against Fescoe. Under the terms of the contract of insurance Geico was required to provide a defense to the case. At the time he started suit the Plaintiff attorney had forwarded only portions of the medicals and the bills to Arbella.

By the end of December 2005 the Plaintiff had forwarded most of the medical records to Arbella. Many of the medical bills were not yet received.

In February 2005 the Plaintiff attorney had a conversation with the Arbella representative. He requested the policy limits of Five Hundred Thousand ($500,000.00) Dollars and told the Arbella representative that the Plaintiff had finished treating at the end of December 2004. Arbella responded that mediation was premature because they needed an end result opinion on the Plaintiff in order to intelligently evaluate the claim. The Plaintiff attorney agreed to obtain an end result letter.

In April the Defendant attorney did obtain an end result letter, but it was not from the treating orthopedic physician. The attorney obtained the end result from a physician that he contacted for that exclusive purpose. This letter, which opined a 17% permanent impairment, was not forwarded to Arbella until June of 2005.

Arbella eventually received all of the medical records. Practically all of the Plaintiff's medical bills were incurred within the few months after the accident. She has had virtually no medical treatment in 2005 and she has been employed full-time and she is now attending school on a full-time basis.

In addition to the end result letter the Plaintiff attorney sent a 93A letter to Arbella in June of 2005.

In response to the 93A letter, and in order to make a response within the thirty (30) day period, Arbella offered $275,000.00 making the total offer on the case to be $295,000.00. This was on June 26, 2005. The evaluation of the case took into consideration that liability was in dispute and that the attending physician had not written the end result letter and up until June of 2005 Arbella had not received all of the medicals. It was Arbella's representative's position to defer ordering an independent medical examination until they received an end result letter from the attending physician. An independent medical examination was then being contemplated.

Immediately after the response to the 93A letter the Plaintiff brought this suit against Arbella and this office was retained.

In the medical records there was a peer review report at the Rhode Island Hospital. The Plaintiff had a post-operative wound infection following surgery. The committee determined that the placement of the pedical screw as sub-optimal which resulted in a post-operative wound infection, thus causing an additional hospitalization. Arbella investigated this possible claim for possible contribution. This was a reasonable endeavor, but based on the medical review of the records the Complaint for Contribution is not being pursued.

  Geico did not have an independent medical examination of the Plaintiff. Arbella scheduled her exam for early October 2005, but because of the Plaintiff's schedule it has been postponed to October 31, 2005. After the report of this independent medical examination has been received Arbella will evaluate the case.

  In June of 2004 the Plaintiff made a request for coverage to Arbella. Arbella responded that it had coverage of $500,000.00.

  In the latter part of that year Arbella received notice that there might be an additional million dollars of coverage in the case. Arbella wrote to their insured to confirm the additional coverage.

  This office, in reviewing the records, followed up on the additional coverage and forwarded them to the Plaintiff attorney this month. There has been no prejudice to the Plaintiff by the delay in obtaining all of the coverage.

2.   **FACTS ESTABLISHED BY PLEADINGS**

  On Friday, May 28, 2004, the date of the accident, the Plaintiff, Lauren Ibbotson, age 18, a senior in high school, was a passenger in a vehicle owned by Cindy Feldman, and driven by Defendant Peter Fescoe, age 19, the boyfriend of the Plaintiff. Cindy Feldman is the mother of Rebecca Feldman, who was the Plaintiff's roommate at the time. Peter Fescoe had permission to drive the Feldman vehicle. Fescoe was involved in an accident on Route 24.

    **Defendant, Arbella Mutual Insurance Company's, Position**

  There have been no pleadings because the case in only a few months old.

3.   **CONTESTED ISSUES OF FACTS**

  The only contested issue of fact is the exact sequence between the time that the Defendant used his cell phone and the accident as described in paragraph 1.

    **Defendant, Arbella Mutual Insurance Company's, Position**

  Please refer to Section 1. Concise Summary of Evidence. Since the deposition of Mr. Cunha has not been taken it is unknown to what extent the facts are in dispute.

4.   **JURISDICTIONAL**

  None.

5.   **QUESTIONS RAISED BY PENDING MOTIONS**

  None.

**Defendant, Arbella Mutual Insurance Company's, Position**

The Plaintiff has scheduled the deposition of Lisa Palma, the Arbella adjuster, on October 27, 2005. The Plaintiff attorney, Brian Cunha's, deposition has been scheduled for November 9, 2005. It is expected that he will file for a Protective Order which motion may be heard on the date of the Pre-Trial Conference.

6. **ISSUE OF LAW**

Whether the Defendant Fescoe was negligent in the operation of his motor vehicle, resulting in injuries to the Plaintiff and whether Defendant Arbella is liable for violation under M.G.L. A. c. 93A and c. 176 D.

**Defendant, Arbella Mutual Insurance Company's, Position**

There are no issues of law or evidentiary questions at this time.

7. **AMENDMENTS TO THE PLEADINGS**

None.

8. **ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION**

None.

9. **LENGTH OF TRIAL**

5 days.

**Defendant, Arbella Mutual Insurance Company's, Position**

It is expected that the court will hear additional evidence after the case-in-chief is heard. The trial for the 93A issue is expected to be one (1) day.

10. **WITNESSES**

(a) <u>FOR THE PLAINTIFF</u>

Lauren Ibbotson

Peter Fescoe

Cindy Feldman

Dr. Harrington, M.D.

Barry Saperia, M.D.

**93A Claim**

Lisa Palmer, Claims Representative
Arbella Insurance Company

Dan Birchett, Supervisor
Arbella Insurance Company

Elizabeth Shaw, Esquire

(b) FOR THE DEFENDANTS CINDY J. HUSTEAD- FELDMAN AND PETER FESCOE

Peter Fescoe
Scituate, MA
Fact Witness

Cindy Feldman
Potomac, MD
Fact Witness

Edward Tarlov, M.D.
Lahey Clinic
Burlington, MA
Expert Neurosurgeon

(c) FOR THE DEFENDANT ARBELLA MUTUAL INSURANCE

Lisa Palma, Claims Representative
Arbella Mutual Insurance Co.

Brian Cunha, Esq.

Elizabeth Shaw, Esq.

11. **PROPOSED EXHIBITS**

(a) FOR THE PLAINTIFF

Medical Records & Bills.

Photos of Scarring

Photos of the scene of the accident.

9

Internal Memorandums and documents and notes received from Arbella Insurance Company, 93A Demand letter, Plaintiff's Complaint and Defendant's Answer

(b) <u>FOR THE DEFENDANT CINDY HUSTEAD - FELDMAN AND PETER FESCOE</u>

Medical Records of the Plaintiff
Report of Edward Tarlov, M.D. concerning his examination of the Plaintiff

(c) <u>FOR THE DEFENDANT ARBELLA MUTUAL INSURANCE</u>

Arbella Mutual Insurance Company's file

File of Attorney Brian Cunha

Medical records

Correspondence between the parties

12. **PROPOSED JUROR QUESTIONS**

In addition to the standard questions:

Have you or any member of your family ever been a Plaintiff in a lawsuit seeking damages for personal injury?

Have you or any member of your family ever been injured in a motor vehicle accident?

Have you or any member of your family ever had surgery to his or her back?

| | |
|---|---|
| The plaintiff, Lauren Ibbotson<br>By her Attorneys,<br>**BRIAN CUNHA & ASSOCIATES**<br><br>**REDDING** | The defendants, Cindy Hustead Feldman, and Peter Fescoe<br>By their Attorneys,<br>**WESTON, PATRICK, WILLARD &** |
| /s/_____<br>Brian R. Cunha, Esquire (BBO:108560)<br>311 Pine Street<br>Fall River, MA 02720<br>(508) 675-9500 | /s/_____<br>Ronald E. Harding, Esquire<br>(BBO: 221340)<br>84 State Street<br>Boston, MA 02109-2299<br>(617) 742-9310 |

10

The defendant Arbella Mutual Ins. Co.
By their Attorneys,
**COSGROVE, EISENBERG & KILEY, P.C.**


/s/_____
Martin S. Cosgrove, Esquire (BBO# 100920 )
803 Hancock Street
Quincy, MA 02170
(617) 479-7770

11